**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA**

ANTONY LEE TURBEVILLE,

      Plaintiff,

CASE NO: 2015 CA 3549

v.                                                              SECTION NO:

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, JOHN DOES, an
Individual, and JOHN WILLIAM MCCALL,
An Individual,

      Defendants.

_____/

## VERIFIED COMPLAINT

PLAINTIFF, by through the undersigned counsel, hereby states as his cause of action against the above named Defendants the following:

1.      Plaintiff, Antony Lee Turbeville ("Turbeville"), is an individual and a resident and citizen of Polk County, Florida.

2.      Defendant, Financial Industry Regulatory Authority (hereinafter referred to as "FINRA"), is a not-for-profit member organization organized and operating under the laws of the State of Delaware, whose primary place of business is in Washington, D.C.. FINRA's agent for service of process is: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

3.      Defendants, John Doe (hereinafter referred to as the "Does"), are the person or persons who are agents of FINRA who participated in the defamation and abuse of process activities described herein, the identities of which are known to FINRA but are currently unknown to Plaintiff.

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 2 of 15

_____

4.     On information and belief, Plaintiff avers that Brooks Brown, both a resident and citizen of Florida, is believed to be one of the individuals who meet the above definition of Does.

5.     Defendant John William McCall ("McCall") is a citizen and resident of Florida.

6.     Beginning in July of 1987, Turbeville was involved in the securities industry.

7.     Turbeville obtained his Series 6, 7, 24, and 63 licenses and was a registered investment advisor.

8.     McCall's mother was a client of Turbeville.

9.     In connection with his services for and on behalf of McCall's mother, Turbeville assisted her in arranging her affairs so that, at her request, McCall received a smaller inheritance at her death than his brother.

10.     When McCall's mother died, he received a smaller inheritance than his brother, and, as a consequence, McCall developed a personal animus towards Turbeville.

11.     Betty Baker ("Baker"), Barbara Carter ("Carter"), and Michael and Marsha Rau (the "Raus"), were all citizens and residents of Florida, who, prior to 2011, had been clients of Turbeville.

12.     At the time Baker, Carter and the Raus became clients of Turbeville, and during the course of Turbeville's provision of services for them, Baker, Carter and the Raus received and executed certain documents in which they represented their

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 3 of 15

knowledge and sophistication as investors, their risk tolerance, their investment objectives, their receipt of information about investments and investment strategies, their approval of transactions executed on their behalf by Turbeville, and their receipt of other information about their investments from Turbeville, all of which are hereinafter referred to as the "Documents".

13.     Turbeville made recommendations and executed transaction on behalf of Baker, Carter and the Raus based upon the information contained in the Documents.

14.     Baker, Carter and the Raus knew at the time they signed the Documents that Turbeville's decisions and transactions he would recommend for them would depend upon their representations as contained in the Documents.

15.     Over time, Baker, Carter and the Raus became dissatisfied with the performance of their investments, and each signed statements prepared by FINRA employee Brooks Brown a Florida resident, expressing that dissatisfaction.

16.     FINRA is a Self-Regulatory Organization ("SRO"), the members of which are persons in the securities industry, which regulates practice in the securities industry.

17.     While Turbeville was involved in the securities industry, he was associated with entities which were members of FINRA.

18.     At the time Baker, Carter and the Raus signed the statements described above, Turbeville was associated with a member of FINRA and was consequently subject to FINRA's authority.

19.     As a result of the above described statements by Baker, Carter, and the Raus, FINRA alleged that Turbeville had violated certain rules and regulations under which the securities industry operated, which allegations Turbeville denied.

20.     As a result of these allegations, Turbeville and FINRA became involved in administrative proceedings (20070011413501) (hereinafter referred to as the "Proceedings") during which extensive testimony was taken before a hearing panel.

21.     Baker, Carter and the Raus testified at the Proceedings.

22.     The testimony of Baker, Carter and the Raus during the Proceedings contradicted the statements contained in the Documents which Baker, Carter and the Raus had originally signed, and which served as the basis for the decisions and the transaction made and executed by Turbeville.

23.     The presentation of evidence in connection with the Proceedings concluded on February 17, 2013.

24.     After the conclusion of the presentation of evidence and the testimony of Baker, Carter and the Raus in the Proceedings, and after Turbeville has ceased to be associated with any FINRA member, and ceased to be involved in the securities industry in any manner in which FINRA would have authority over Turbeville or his actions, Turbeville sued Baker, Carter and the Raus in Florida State Court (the "Florida Action").

25.     The Florida Action was based on the ground that either Baker, Carter and the Raus had intentionally made misstatements as to their investment skill, sophistication, and intention, as to their risk tolerance, and as to their investment

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 5 of 15

objectives in the Documents, resulting in Turbeville's reasonable reliance on those representations, and the consequent charges brought by FINRA against him, or Baker, Carter and the Raus perjured themselves at the hearings, either of which were to Turbeville's detriment.

26.    Each of the statements contained in the Complaint filed in the Florida Action was true, correct, and accurate.  The case number for the Florida Action was 2013CA-3554.

27.    The Florida Action was brought in good faith, with assistance of Florida licensed counsel, and for the purpose of obtaining recovery from the Individual Defendants therein for the harm inflicted on Turbeville as a result of Baker, Carter and the Raus' false statements of fact.

28.    On information and belief, McCall alerted FINRA as to the Florida Action and requested that Turbeville be investigated by FINRA in connection with the Florida Action.

29.    When FINRA proceeds to investigate a person, it is required to proceed in accordance with Regulatory Notice To Members (NTM) 09-17.

30.    In part, Regulatory Notice 09-17 states that "All FINRA investigations are non-public."

31.    Doe, acting on behalf of FINRA, acting upon information and belief with McCall in order to defame and denigrate Turbeville, ignored the requirements of Regulatory Notice 09-17, and, without giving prior notice to Turbeville as required by

Case 8:15-cv-02920-JSM-EAJ   Document 2   Filed 12/23/15   Page 6 of 43 PageID 17

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 6 of 15

Regulatory Notice 09-17, published EXHIBIT A, a copy of which is attached hereto and incorporated herein by this reference.

32.    EXHIBIT A was first published in or around July, 2013, and was continuously published until 2014 or 2015

33.    Upon reasonable information and belief FINRA, acting in concert with McCall and the Does, hired and paid the fees and expenses of attorneys to represent Baker, Carter and the Raus in the Florida Action out of FINRA's funds, although FINRA was not a party to the Florida Action.

34.    FINRA did so in order to prevent exposure in the Florida Action of misconduct by FINRA employees, and to maliciously prevent Turbeville from clearing his name and reputation.

35.    FINRA has terminated said alleged investigation described in EXHIBIT A, if in fact it ever actually commenced such investigation, without having brought charges against Turbeville in connection therewith.

36.    At the time FINRA first published EXHIBIT A, during the entire period during which FINRA published EXHIBIT A, and at the time Turbeville filed the Florida Action, Turbeville was neither a member of FINRA nor was he associated with a member of FINRA, nor was he otherwise subject to the disciplinary and/or regulatory jurisdiction of FINRA for the actions alleged in EXHIBIT A.

## DEFAMATION

37.    Plaintiff incorporates herein by reference the statements contained in paragraphs 1 through 36, inclusive.

38.   FINRA and the Does published EXHIBIT A.

39.   EXHIBIT A was published in a manner designed to be read by the public, including but not limited to members of the securities industry, and was internet access available.

40.   On information and belief, EXHIBIT A was in fact read by third parties during the entire period during which it was posted on line by FINRA.

41.   In EXHIBIT A, FINRA alleged, directly and/or by innuendo, that:

   a.   Turbeville made false statements in connection with the Complaint filed in the Florida Action;

   b.   Turbeville brought the Florida Action to intimidate Baker, Carter and the Raus;

   c.   The Florida Action brought by Turbeville was frivolous;

   d.   Turbeville had engaged in illegal conduct;

   e.   Turbeville was guilty of professional misconduct in bringing the Florida Action.

42.   Each of the allegations described in the previous paragraph are false and factually/legally impossible.

43.   FINRA and Doe knew that the allegations in question were false when and while they published said allegations.

44.   Alternatively, FINRA and Doe acted with reckless disregard of the truth in publishing the above allegations.

45.    In the further alternative, FINRA and Doe acted with negligent disregard for the truth of the allegations made in EXHIBIT A.

46.    The allegations in question were defamatory towards Turbeville because, inter alia:

    a.    They impugned his business and professional ethics and ability;

    b.    They tend to harm the reputation of Turbeville and to lower him in the estimation of the community, and to deter others from associating with or dealing with Turbeville;

    c.    They accuse Turbeville of illegal conduct.

47.    FINRA took steps to discourage Turbeville from discovering the publication of the defamatory materials referenced in Exhibit A. For example, and without limitation, FINRA failed to follow its established and customary protocols for dealing with alleged complaints over a FINRA member when publishing Exhibit A. At the time of Exhibit A's publication, Turbeville was not a member of FINRA and thus would have had no reason to review the FINRA WEB site. Further, while FINRA had issued Turbeville a document known as a "Wells" notice which dealt with the accusations made in Exhibit A, and while Turbeville had responded to the allegations set forth in the Wells notice, FINRA's rules and regulations precluded publication of a formal charge as was set forth in Exhibit A when FINRA had only a Wells notice and a response to that Wells notice. Instead of following its normal protocols and delaying publication of Exhibit A until—if ever—proper grounds existed for its publication, FINRA instead published Exhibit A far earlier than would normally have been the case had

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 9 of 15

customary protocols been followed.   This premature publication delayed Turbeville's

discovery of the defamatory materials set forth in Exhibit A.[1]   Further, FINRA had no

jurisdiction to issue a Wells notice, investigate, or conduct any disciplinary action for the

conduct.

48.    Turbeville has suffered injuries as a result of the above defamation,

including but not limited to, a diminution of his earnings, a diminished standing in his

trade and profession, increased difficulties in obtaining new clients in his professional

activities.

49.    Potential clients and business relationships of Turbeville's non-securities

ventures, including but not limited to Accuity and Quality Health Care, Opus Healthcare

and Marie Saunders among others , refused to deal with him because of the allegations

made in EXHIBIT A.

50.    The actions by FINRA and the Does, as described above, were outside

the scope of their authorized regulatory activities, and were not stages in the judicial,

prosecutorial or regulatory process.

51.    The conduct of the Does, as described above, was not within the scope of

their employment by FINRA and was not within the scope of their authority.

---

[1] Turbeville does not concede that publication of Exhibit A would have been authorized at any time inasmuch as FINRA had no jurisdiction over the actions based upon its own published rules and that no formal charges relating to the accusations set forth in Exhibit A were ever prosecuted by FINRA. However, Turbeville notes that even if such charges could have been filed, no publication of such charges could be made under FINRA's rules and regulations given the status of the purported investigation.

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 10 of 15

52.     The publication described above was not in furtherance of, nor was it part of the process of regulation, investigation, adjudication or prosecution by FINRA, and was, in fact, conduct prohibited by FINRA in Regulatory Notice 09-17.

53.     The conduct allegedly being investigated by FINRA as described in EXHIBIT A was conduct which occurred after Turbeville ceased to be associated with a member of FINRA and was conduct unrelated to and outside FINRA's jurisdiction and regulatory authority.

54.     The communication contained in EXHIBIT A was in no manner privileged.

## ABUSE OF PROCESS

55.     Plaintiff incorporates herein by reference the statements contained in paragraphs 1 through 36, inclusive.

56.     None of the Defendants herein was a party or was privity with a party involved in the Florida Action.

57.     The Defendants jointly and severally, intentionally utilized the process of the State of Florida in and through the Florida Action for purposes collateral to the litigation.

58.     Said collateral purposes included the harassment of Turbeville, and the prevention of the exposure of civil misconduct by representatives of FINRA in soliciting Baker, Carter and the Raus to perjure themselves.

59.     The activities of FINRA and of the Does in connection with the Florida Action were outside the scope of their regulatory authority, and outside the scope of their corporate authority.

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 11 of 15

60.    The actions of the Defendants described herein injured Turbeville by delaying resolution of the Florida Action, by increasing the costs of the action, by delaying the date on which he will be made whole as a result of the action, and by hindering his ability to clear his reputation.

61.    The conduct allegedly being investigated by FINRA as described in EXHIBIT A was conduct which occurred after Turbeville ceased to be associated with a member of FINRA and was conduct unrelated to and outside FINRA's regulatory authority.

### INTENTIONAL INTERFERENCE WITH A PROSPECTIVE ADVANTAGE

62.    Plaintiff incorporates herein by reference the statements contained in paragraphs 1 through 36, inclusive.

63.    After Turbeville left the securities industry, he engaged in the business of providing services to third parties.

64.    These services were unrelated to the securities industry and were not subject to regulation by FINRA, nor was Turbeville associated with a person who was a member of FINRA or subject to regulation by FINRA.

65.    During the course of his provision of such services, Turbeville met with and obtained commitments from several prospective clients and business relations by which the prospective clients agreed to acquire Turbeville's services in exchange for payment by them of his fees and charges and the business relations agreed to do business with him in ways which would have generated additional business income.

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page 12 of 15

66.    Said prospective clients and business relations later informed Turbeville

that they had reviewed information about him published by FINRA on the internet,

including EXHIBIT A, and as a result of FINRA's statements about him including the

statements contained in EXHIBIT A, they were declining to do business with Turbeville.

67.    Turbeville lost income which he would have generated from these

prospective clients and business relationships but for the conduct of FINRA in

publishing EXHIBIT A.

68.    The Defendants knew that Turbeville was soliciting prospective clients for

his service business.

69.    The Defendants knew that the publication of EXHIBIT A would tend to

interfere with Turbeville's ability to attract prospective clients.  While it is true that

Turbeville had been the subject of prior FINRA complaints which were available to

potential business customers to review prior to doing business with Turbeville, Exhibit

A's publication was a publication that contained only one side of an accusation by

FINRA and did not contain any of Turbeville's version of events.  Thus, prospective

customers of Turbeville's were unable to compare FINRA's accusations with

Turbeville's response to those allegations and were left instead with a bare allegation of

spurious fact and defamatory material without any response by Turbeville.  The

publication of Exhibit A in this context was not only done in a manner which failed to

provide a forum for Turbeville to respond, the publication was done in a manner and at

a time when, under FINRA's own internal rules and regulations, no inquiry,

investigation, or action could have been conducted at all and no publication should have

been made public even if such actions should have been conducted.[2]  By publishing these accusations as set forth in Exhibit A, Turbeville's due process right to defend himself against FINRA's charges was denied even though no defense should have been necessary because FINRA was outside of its authority.

70.     The Defendants intentionally and without justification interfered with Turbeville's advantageous business relationships with prospective clients and business relations through the publication of EXHIBIT A.

71.     As a result of the publication of EXHIBIT A Turbeville lost income from the potential clients and business relationships who would have engaged his services but for the publication of EXHIBIT A.

72.     A few of those prospective clients and business relations that were lost were  Accuity, Quality Health Care, Opus, and Marie Saunders among others.

## CONSPIRACY

73.     Plaintiff incorporates herein by reference the statements contained in paragraphs 1 through 36, inclusive.

74.     FINRA and the Does entered into an agreement with McCall to publish the EXHIBIT A, as described above.

---

[2] FINRA had issued to Turbeville a document known as a "Wells" notice to which Turbeville had responded.  However, under FINRA's rules and regulations, no allegation of wrongdoing should have been published by FINRA until formal charges had been brought.  At the time of the publication of Exhibit A, and continuing to this day, FINRA's premature publication of Exhibit A, was done in a manner which did not permit Turbeville to respond to the allegations made thus mandating that members of the public—including prospective business associates of Turbeville's—have available to them only the accusations by FINRA, published and pursued outside of any jurisdiction against Turbeville.  Had FINRA followed its customary and normal protocols, no investigatory pursuit, regulatory action or publication of the allegations as set forth in Exhibit A would have resulted.  Further, such action, if legitimate would have resulted in the filing of a public response by Turbeville.

Antony Lee Turbeville v.
Financial Industry Regulatory
Authority, et al
Complaint
Page **14** of **15**

---

75.     FINRA and the Does entered into an agreement with McCall to abuse the process of the State of Florida in the Florida Action as described above.

76.     FINRA and the Does entered into an agreement with McCall to interfere with Turbeville's prospective business advantages as described above.

77.     The object of these conspiracies were tortious.

78.     The means utilized by these conspiracies constituted tortious conduct.

79.     The Defendants committed overt acts, as described above, in furtherance of the conspiracies.

80.     As a result of the Defendants' conspiracy, Turbeville suffered the injuries described above.

WHEREFORE Turbeville respectfully requests this court to hear this case, to provide Plaintiff with a trial by jury, and to award damages, in favor of the plaintiff and against the defendants for costs of this action and further relief as deemed just by the Court.

Dated this 30th day of September, 2015.

                                        SAUNDERS LAW GROUP

                                        By:   /s/ Thomas C. Saunders
                                              Thomas C. Saunders
                                              Florida Bar No. 0386080
                                              courtfilings@saunders-law.com
                                              Post Office Box 1279
                                              Bartow, FL 33831-1279
                                              (863) 533-6200
                                              (863) 533-5800 (FAX)
                                              Attorneys for Plaintiff

## VERIFICATION



Antony Lee Turbeville

STATE OF FLORIDA
COUNTY OF POLK

The foregoing instrument was acknowledged before me this 29th day of September, 2015, by Antony Lee Turbeville, who is personally known to me ~~or has produced~~

_____ ~~as identification.~~

My Commission Expires:


Notary Public

(Affix Seal)

_____
Printed Name of Notary Public

MARY JO JERKINS
Commission # FF 177397
Expires December 18, 2018
Bonded Thru Troy Fain Insurance 800-385-7019



**BrokerCheck Report**

# ANTONY LEE TURBEVILLE

CRD# 1721014

Report #75636-77605, data current as of Monday, June 02, 2014.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Broker Qualifications | 2 - 3 |
| Registration and Employment History | 4 - 5 |
| Disclosure Events | 6 |

Exhibit "A"



**About BrokerCheck®**



BrokerCheck offers information on all current-and many former-FINRA-registered securities brokers, and all current and former FINRA-registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.



- **What is included in a BrokerCheck report?**
  BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
  Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
  The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**
  Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
  To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at http://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**
  FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

Thank you for using FINRA BrokerCheck.



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at
brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

## ANTONY L. TURBEVILLE
### CRD# 1721014

This broker is not currently registered with FINRA.

# Report Summary for this Broker



This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

## Broker Qualifications

This broker is not currently registered with FINRA.

This broker has passed:

- 1 Principal/Supervisory Exam
- 2 General Industry/Product Exams
- 1 State Securities Law Exam

## Registration History

This broker was previously registered with the following FINRA firm(s):

**BROOKSTONE SECURITIES, INC.**
CRD# 13366
LAKELAND, FL
04/2005 - 06/2012

**ARCHER ALEXANDER SECURITIES CORPORATION**
CRD# 41555
KANSAS CITY, MO
01/2004 - 04/2005

**NATIONS FINANCIAL GROUP, INC.**
CRD# 44181
CEDAR RAPIDS, IA
12/2003 - 01/2004

## Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?   Yes

The following types of disclosures have been reported:

| Type | Count |
| --- | --- |
| Regulatory Event | 2 |
| Investigation | 1 |
| Customer Dispute | 1 |

## Investment Adviser Representative Information

The information below represents the individual's record as a broker. For details on this individual's record as an investment adviser representative, visit the SEC's Investment Adviser Public Disclosure website at

http://www.adviserinfo.sec.gov

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

## Broker Qualifications



### Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

This broker is not currently registered with FINRA.

©2014 FINRA. All rights reserved.    Report# 75836-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.



## Broker Qualifications

### Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

**This individual has passed 1 principal/supervisory exam, 2 general industry/product exams, and 1 state securities law exam.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|------|----------|------|
| General Securities Principal Examination | Series 24 | 02/14/2005 |

### General Industry/Product Exams

| Exam | Category | Date |
|------|----------|------|
| Investment Company Products/Variable Contracts Representative Examination | Series 6 | 08/18/1987 |
| General Securities Representative Examination | Series 7 | 06/28/1996 |

### State Securities Law Exams

| Exam | Category | Date |
|------|----------|------|
| Uniform Securities Agent State Law Examination | Series 63 | 04/10/2002 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

# Registration and Employment History



## Registration History

The broker previously was registered with the following FINRA firms:

| Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|
| 04/2005 - 06/2012 | BROOKSTONE SECURITIES, INC. | 13368 | LAKELAND, FL |
| 01/2004 - 04/2005 | ARCHER ALEXANDER SECURITIES CORPORATION | 41555 | KANSAS CITY, MO |
| 12/2003 - 01/2004 | NATIONS FINANCIAL GROUP, INC. | 44181 | CEDAR RAPIDS, IA |
| 04/2003 - 12/2003 | ARCHER ALEXANDER SECURITIES CORPORATION | 41555 | KANSAS CITY, MO |
| 08/2002 - 04/2003 | GUNNALLEN FINANCIAL, INC | 17609 | TAMPA, FL |
| 05/2002 - 08/2002 | GUNNALLEN FINANCIAL, INC | 17609 | TAMPA, FL |
| 07/2000 - 05/2002 | KOVACK SECURITIES INC. | 44848 | FT. LAUDERDALE, FL |
| 04/2000 - 07/2000 | INTERFIRST CAPITAL CORPORATION | 7659 | LOS ANGELES, CA |
| 06/1999 - 04/2000 | SAN CLEMENTE SECURITIES, INC. | 21895 | SAN CLEMENTE, CA |
| 01/1995 - 06/1999 | 1717 CAPITAL MANAGEMENT COMPANY | 4082 | NEWARK, DE |
| 04/1994 - 02/1995 | NORTH AMERICAN MANAGEMENT, INC. | 624 | SIOUX FALLS, SD |
| 06/1993 - 04/1994 | JACKSON NATIONAL FINANCIAL SERVICES, INC. | 29604 | SANTA MONICA, CA |
| 09/1987 - 06/1991 | FIRST AMERICAN NATIONAL SECURITIES, INC. | 10111 | DULUTH, GA |

## Employment History

Below is the broker's employment history for up to the last 10 years.

**Please note that the broker is required to provide this information only while registered with FINRA and the information is not updated after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 04/2005 - Present | BROOKSTONE SECURITIES, INC. | LAKELAND, FL |
| 01/2004 - 04/2005 | ARCHER ALEXANDER SECURITIES CORPORATION | LAKELAND, FL |

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

## Registration and Employment History



### Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

T SQUARED FINANCIAL GROUP, 100% OWNER, 5 HRS PER WEEK. AFTER HOURS ACTIVITY. PO BOX 8087, LAKELAND, FL 33892, PRESIDENT/CEO BEGAN 12/99 COMPANY IS CURRENTLY DORMANT.

PLATINUM FINANCIAL PLANNING, INC. 100% OWNER, NON-INVESTMENT RELATED. TIME SPENT 15 HOURS, PER WEEK DURING MARKET HOURS. PO BOX 8087, LAKELAND, FL, 33802, MEDICAID APPLICATION SERVICE FOR NURSING HOME RESIDENTS. PRESIDENT/CEO. COMPANY BEGAN 12/2000. DUTIES INCLUDE MEETING WITH CLIENTS CREATIVE SOLUTION TO QUALIFICATION PROBLEMS, REGULAR BOARD DUTIES.

BROOKSTONE CAPITAL MANAGEMENT, LLC. 100% OWNER. NO LONGER A MANAGING MEMBER AS OF 10/16/2011. DOES NOT REQUIRE ANY OF MY TIME. DOES NOT INTERFERE WITH TRADING. FIRM FOUNDED IN 2004.

COMMUNITY SOUTHERN BANK, FORMER CHAIRMAN OF THE BOARD, MINORITY STOCKHOLDER. 3 HOURS PER MONTH. AFTER HOURS ACTIVITY. RESIGNED FROM BOARD AS OF 7/7/11

BROOKSTONE NOTE SERVICES,LLC, PRESIDENT, 100% OWNERSHIP, AFTER HOURS ACTIVITY. PO BOX 8087, LAKELAND, FL 33811. OWNS THE BUILDING THAT HOUSES BROOKSTONE SECURITIES. COMPANY FOUNDED IN 11/2007. O HOURS PER MONTH DURING MARKET HOURS.

EASTERN KENTUCKY LAND & WILDLIFE, LLC, NON-INVESTMENT RELATED, OWNERSHIP 20%, AFTER HOURS ACTIVITY.

BROKERDEALERMATCH, LLC, NON-INVESTMENT RELATED, OWNERSHIP 100%, AFTER HOURS ACTIVITY.

FORWARD FUNDING PARTNERS LLC. NON-INVESTMENT RELATED. 20 HRS/WK DURING REGULAR MRKT HRS. 5 HRS DURING NON- MRKT HRS.

AMERICAN HERITAGE HARDWOODS, 1840 GIBSONIA GALLOWAY RD., SUITE 200, LAKELAND, FL 33811. IMPORTING HARDWOOD FLOORING FROM CHINA. MANAGING MEMBER - DISBURSEMENT OF FUNDS AND MANAGEMENT OF IMPORT PROCESS. 40 HOURS PER MONTH, NON-INVESTMENT RELATED.

BD SWITCH, LLC - 2920 DRANE FIELD ROAD, LAKELAND, FL 33811 (WW.BDSWITCH.COM). RECRUITING FIRM FOR REGISTERED REPS/IAR'S. 20 HOURS PER WEEK DURING MARKET HOURS AND 3 HOURS PER WEEK OUTSIDE MARKET HOURS. COMPENSATION WILL CONSIST OF FEES EARNED FOR PLACING RR'S AND IARS AS WELL AS RETAINERS PAID BY BD'S AND RIA'S FOR MY RECRUITING EFFORTS.

## Disclosure Events



**What you should know about reported disclosure events:**

1. All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   - A law enforcement agency must file formal charges before a broker is required to disclose a particular criminal event.
   - A customer dispute must involve allegations that a broker engaged in activity that violates certain rules or conduct governing the industry and that the activity resulted in damages of at least $5,000.

3. **Disclosure events in BrokerCheck reports come from different sources:**
   - As mentioned at the beginning of this report, information contained in BrokerCheck comes from brokers, brokerage firms and regulators. When more than one of these sources reports information for the same disclosure event, all versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.

4. **There are different statuses and dispositions for disclosure events:**
   - A disclosure event may have a status of *pending, on appeal,* or *final.*
     - A "pending" event involves allegations that have not been proven or formally adjudicated.
     - An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     - A "final" event has been concluded and its resolution is not subject to change.
   - A final event generally has a disposition of *adjudicated, settled* or *otherwise resolved.*
     - An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     - A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that brokers and brokerage firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     - A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

**For your convenience, below is a matrix of the number and status of disclosure events involving this broker. Further information regarding these events can be found in the subsequent pages of this report. You also may wish to contact the broker to obtain further information regarding these events.**

|  | Pending | Final | On Appeal |
|---|---|---|---|
| Regulatory Event | 0 | 1 | 1 |



| | | | |
|---|---|---|---|
| Customer Dispute | 0 | 1 | N/A |
| Investigation | 1 | N/A | N/A |

©2014 FINRA. All rights reserved.    Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

www.finra.org/brokercheck



## Disclosure Event Details

When evaluating this information, please keep in mind that a disclosure event may be pending or involve allegations that are contested and have not been resolved or proven. The matter may, in the end, be withdrawn, dismissed, resolved in favor of the broker, or concluded through a negotiated settlement for certain business reasons (e.g., to maintain customer relationships or to limit the litigation costs associated with disputing the allegations) with no admission or finding of wrongdoing.

This report provides the information exactly as it was reported to CRD and therefore some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

### Regulatory - Final

This type of disclosure event may involves (1) a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, self-regulatory organization, federal regulatory such as the Securities and Exchange Commission, foreign financial regulatory body) for a violation of investment-related rules or regulations; or (2) a revocation or suspension of a broker's authority to act as an attorney, accountant, or federal contractor.

**Disclosure 1 of 1**

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Regulatory Action Initiated By:** | FINRA |
| **Sanction(s) Sought:** | Other: N/A |
| **Date Initiated:** | 06/28/2010 |
| **Docket/Case Number:** | 2009017275301 |
| **Employing firm when activity occurred which led to the regulatory action:** | BROOKSTONE SECURITIES, INC. |
| **Product Type:** | Equity Listed (Common & Preferred Stock) Promissory Note Other: UNSECURED BRIDGE NOTES/WARRANTS |
| **Allegations:** | FINRA RULE 2010, NASD RULES 2110, 3010(A) AND (B) - A MEMBER FIRM, ACTING THROUGH ANTONY L. TURBEVILLE, FAILED TO REASONABLY SUPERVISE A REGISTERED REPRESENTATIVE AND FAILED TO FOLLOW UP ON RED FLAGS THAT SHOULD HAVE ALERTED THEM TO THE NEED TO INVESTIGATE THE REPRESENTATIVE'S SALES PRACTICES AND DETERMINE WHETHER TRADING RESTRICTIONS, HEIGHTENED SUPERVISION OR DISCIPLINE WERE WARRANTED. DESPITE THE REPRESENTATIVE'S LACK OF EXPERIENCE AND THE HIGH RISK OF CERTAIN INVESTMENTS, TURBEVILLE DID NOTHING TO ENSURE THAT THE |



REPRESENTATIVE WAS MAKING SUITABLE RECOMMENDATIONS. THE FIRM, ACTING THROUGH TURBEVILLE, FAILED TO ESTABLISH, MAINTAIN AND ENFORCE SUPERVISORY PROCEDURES REASONABLY DESIGNED TO PREVENT VIOLATIONS OF NASD RULE 2310 REGARDING SUITABILITY. TURBEVILLE FAILED TO TAKE STEPS TO ENSURE THAT THE CHIEF COMPLIANCE OFFICER HAD COMPLETED THE DUE DILIGENCE PROCESS REGARDING SECURITIES. TURBEVILLE WAS AWARE OF THE LACK OF SUPERVISORY CONTROLS TO PREVENT AND DETECT UNSUITABLE RECOMMENDATIONS RESULTING FROM EXCESSIVE TRADING, EXCESSIVE USE OF MARGIN AND OVER-CONCENTRATION AND THAT PRINCIPALS DID NOT REVIEW TRADES OR CORRESPONDENCE. THE FIRM'S ACCOUNT APPLICATION PROCESS WAS FLAWED SO THAT THE REVIEWING PRINCIPAL WAS UNABLE TO OBTAIN AN ACCURATE PICTURE OF CUSTOMERS' FINANCIAL STATUS, INVESTMENT OBJECTIVES AND INVESTMENT HISTORY WHEN REVIEWING TRANSACTIONS FOR SUITABILITY. THE FIRM'S PROCEDURES WERE UNREASONABLE BECAUSE THEY FAILED TO IDENTIFY SPECIFIC REPORTS THE COMPLIANCE DEPT. WAS TO REVIEW AND PROVIDED NO GUIDANCE ON THE ACTIONS OR ANALYSIS THAT SHOULD OCCUR IN RESPONSE TO REPORTS AND TURBEVILLE DID NOT TAKE STEPS TO ADDRESS THE INADEQUATE SYSTEM.

**Current Status:** Final

**Resolution:** Decision & Order of Offer of Settlement

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** No

**Resolution Date:** 09/27/2011

**Sanctions Ordered:** Civil and Administrative Penalty(ies)/Fine(s) Suspension

**If the regulator is the SEC, CFTC, or an SRO, did the action result in a finding of a willful violation or failure to supervise?** No

©2014 FINRA. All rights reserved.   Report# 75836-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.



**(1) willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or to have been unable to comply with any provision of such Act, rule or regulation?**

**(2) willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board? or**

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.



(3) failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation by such person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any such Acts, or any of the rules of the Municipal Securities Rulemaking Board?

**Sanction 1 of 1**

| | |
|---|---|
| Sanction Type: | Suspension |
| Capacities Affected: | ANY PRINCIPAL CAPACITY |
| Duration: | THREE MONTHS |
| Start Date: | 10/17/2011 |
| End Date: | 01/16/2012 |

**Monetary Sanction 1 of 1**

| | |
|---|---|
| Monetary Related Sanction: | Civil and Administrative Penalty(ies)/Fine(s) |
| Total Amount: | $10,000.00 |
| Portion Levied against Individual: | $10,000.00 |
| Payment Plan: | |
| Is Payment Plan Current: | Yes |
| Date Paid by Individual: | 10/11/2011 |
| Was any portion of penalty waived? | No |
| Amount Waived: | |
| Regulator Statement | WITHOUT ADMITTING OR DENYING THE ALLEGATIONS, TURBEVILLE |

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.



CONSENTED TO THE DESCRIBED SANCTIONS AND TO THE ENTRY OF
FINDINGS; THEREFORE, HE IS FINED $10,000 AND SUSPENDED FROM
ASSOCIATION WITH ANY FINRA MEMBER IN ANY PRINCIPAL CAPACITY
FOR THREE MONTHS. THE SUSPENSION IS IN EFFECT FROM OCTOBER 17,
2011 THROUGH JANUARY 16, 2012.

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Regulatory Action Initiated By:** | FINRA |
| **Sanction(s) Sought:** | Other: N/A |
| **Date Initiated:** | 06/28/2010 |
| **Docket/Case Number:** | 2009017275301 |
| **Employing firm when activity occurred which led to the regulatory action:** | BROOKSTONE SECURITIES, INC. |
| **Product Type:** | Equity Listed (Common & Preferred Stock)<br>Promissory Note<br>Other: UNSECURED BRIDGE NOTES/WARRANTS |
| **Allegations:** | FINRA RULE 2010, NASD RULES 2110, 3010(A) AND (B) - A MEMBER FIRM, ACTING THROUGH ANTONY L. TURBEVILLE, FAILED TO REASONABLY SUPERVISE A REGISTERED REPRESENTATIVE AND FAILED TO FOLLOW UP ON RED FLAGS THAT SHOULD HAVE ALERTED THEM TO THE NEED TO INVESTIGATE THE REPRESENTATIVE'S SALES PRACTICES AND DETERMINE WHETHER TRADING RESTRICTIONS, HEIGHTENED SUPERVISION OR DISCIPLINE WERE WARRANTED. DESPITE THE REPRESENTATIVE'S LACK OF EXPERIENCE AND THE HIGH RISK OF CERTAIN INVESTMENTS, TURBEVILLE DID NOTHING TO ENSURE THAT THE REPRESENTATIVE WAS MAKING SUITABLE RECOMMENDATIONS. A MEMBER FIRM, ACTING THROUGH TURBEVILLE, FAILED TO ESTABLISH, MAINTAIN AND ENFORCE SUPERVISORY PROCEDURES REASONABLY DESIGNED TO PREVENT VIOLATIONS OF NASD RULE 2310 REGARDING SUITABILITY. TURBEVILLE FAILED TO TAKE STEPS TO ENSURE THAT THE CHIEF COMPLIANCE OFFICER HAD COMPLETED THE DUE DILIGENCE PROCESS REGARDING SECURITIES. TURBEVILLE WAS AWARE OF THE LACK OF SUPERVISORY CONTROLS TO PREVENT AND DETECT UNSUITABLE RECOMMENDATIONS RESULTING FROM EXCESSIVE TRADING, EXCESSIVE USE OF MARGIN AND OVER-CONCENTRATION AND THAT PRINCIPALS DID NOT REVIEW TRADES OR CORRESPONDENCE. THE FIRM'S ACCOUNT APPLICATION PROCESS WAS FLAWED SO THAT THE |



REVIEWING PRINCIPAL WAS UNABLE TO OBTAIN AN ACCURATE PICTURE OF CUSTOMERS' FINANCIAL STATUS, INVESTMENT OBJECTIVES AND INVESTMENT HISTORY WHEN REVIEWING TRANSACTIONS FOR SUITABILITY. THE FIRM'S PROCEDURES WERE UNREASONABLE BECAUSE THEY FAILED TO IDENTIFY SPECIFIC REPORTS THE COMPLIANCE DEPT. WAS TO REVIEW AND PROVIDED NO GUIDANCE ON THE ACTIONS OR ANALYSIS THAT SHOULD OCCUR IN RESPONSE TO REPORTS AND TURBEVILLE DID NOT TAKE STEPS TO ADDRESS THE INADEQUATE SYSTEM.

| | |
|---|---|
| **Current Status:** | Final |
| **Resolution:** | Acceptance, Waiver & Consent(AWC) |
| **Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** | No |
| **Resolution Date:** | 09/27/2011 |
| **Sanctions Ordered:** | Civil and Administrative Penalty(ies)/Fine(s) Suspension |
| **Sanction 1 of 1** | |
| **Sanction Type:** | Suspension |
| **Capacities Affected:** | PRINCIPAL CAPACITIES ONLY |
| **Duration:** | 3 MONTHS |
| **Start Date:** | 10/17/2011 |
| **End Date:** | 01/16/2012 |
| **Monetary Sanction 1 of 1** | |
| **Monetary Related Sanction:** | Civil and Administrative Penalty(ies)/Fine(s) |
| **Total Amount:** | $10,000.00 |
| **Portion Levied against individual:** | $10,000.00 |
| **Payment Plan:** | CREDIT CARD |
| **Is Payment Plan Current:** | Yes |
| **Date Paid by individual:** | 10/11/2011 |

User Guidance



**Was any portion of penalty waived?**     No

**Amount Waived:**

**Broker Statement**     MR. TURBEVILLE HAS SETTLED FINRA DISCIPLINARY PROCEEDING 200901725301 WITH A PAYMENT OF A $10,000 FINE AND A 3 MONTH SUSPENSION (10/17/2011 - 1/16/2012) IN HIS PRINCIPAL CAPACITIES ONLY. HE AGREED TO THESE FAVORABLE SETTLEMENT TERMS TO AVOID FURTHER EXPENSES AND COSTS, INCLUDING THE ADDITIONAL LEGAL FEES AND EXPENSES THAT WOULD INEVITABLY RESULT FROM HAVING TO DEFEND THE ACTION ON THE MERITS, AND THE INCONVENIENCE, DISTRACTION AND VALUABLE TIME THAT WOULD BE LOST LITIGATING THE DISPUTE. MOREOVER, MR. TURBEVILLE AGREED TO SETTLE BECAUSE THE TERMS OF THE SETTLEMENT EXPLICITLY PROVIDED THE SETTLEMENT WAS NOT AN ADMISSION OF ANY OF THE ALLEGATIONS SET FORTH IN THE COMPLAINT OR THE "ENTRY OF FINDINGS". THE SETTLEMENT SPECIFICALLY STATES THAT "RESPONDENTS HAVE CONSENTED, WITHOUT ADMITTING OR DENYING THE ALLEGATIONS OF THE COMPLAINT" TO THE ENTRY OF FINDINGS AND VIOLATIONS CONSISTENT WITH THE ALLEGATIONS OF THE COMPLAINT. THE CIRCUMSTANCES LEADING TO THE DISCIPLINARY ACTION WERE RELATED TO THE ACTIVITIES OF A ROGUE BROKER, [THIRD PARTY]. [THIRD PARTY] WAS BRIEFLY REGISTERED WITH BROOKSTONE FROM 04/16/2008 TO 04/03/2009. MR. TURBEVILLE WAS THE CHIEF EXECUTIVE OFFICER DURING THAT TIME PERIOD AND NOT RESPONSIBLE FOR THE DIRECT SUPERVISION OF [THIRD PARTY].



## Regulatory - On Appeal

This type of disclosure event may involves (1) a formal proceeding initiated by a regulatory authority (e.g., a state securities agency, self-regulatory organization, federal regulator such as the Securities and Exchange Commission, foreign financial regulatory body) for a violation of investment-related rules or regulations that is currently on appeal; or (2) a revocation or suspension of a broker's authority to act as an attorney, accountant, or federal contractor that is currently on appeal.

**Disclosure 1 of 1**

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Regulatory Action Initiated By:** | FINRA |
| **Sanction(s) Sought:** | Other: N/A |
| **Date Initiated:** | 12/30/2009 |
| **Docket/Case Number:** | 2007011413501 |
| **Employing firm when activity occurred which led to the regulatory action:** | BROOKSTONE SECURITIES, INC. |
| **Product Type:** | Other: COLLATERALIZED MORTGAGE OBLIGATIONS |
| **Allegations:** | SECTION 10(B) OF THE SECURITIES EXCHANGE ACT, SEC RULE 10B-5, NASD RULES 2110, 2120, 2210(D)(1)(A), 2210(D)(1)(B), 2310(A), 3010(B) - ANTONY LEE TURBEVILLE, IN CONNECTION WITH THE PURCHASE OR SALE OF COLLATERALIZED MORTGAGE OBLIGATIONS (CMOS), DIRECTLY OR INDIRECTLY, BY THE USE OF MEANS OR INSTRUMENTALITIES OF INTERSTATE COMMERCE (INCLUDING BY TELEPHONE), OR OF THE MAILS, KNOWINGLY OR RECKLESSLY EMPLOYED DEVICES, SCHEMES OR ARTIFICES TO DEFRAUD; MADE UNTRUE STATEMENTS OF A MATERIAL FACT OR OMITTED TO STATE A MATERIAL FACT NECESSARY IN ORDER TO MAKE THE STATEMENTS MADE, IN LIGHT OF THE CIRCUMSTANCES UNDER WHICH THEY WERE MADE, NOT MISLEADING, CONCERNING CMO INVESTMENTS; OR ENGAGED IN ACTS, PRACTICES OR COURSES OF BUSINESS WHICH OPERATED, OR WOULD OPERATE, AS A FRAUD OR DECEIT UPON HIS CUSTOMERS. TURBEVILLE EFFECTED TRANSACTIONS IN, OR INDUCED THE PURCHASE OR SALE OF, SECURITIES BY MEANS OF MANIPULATIVE, DECEPTIVE OR OTHER FRAUDULENT DEVICE OR CONTRIVANCE. TURBEVILLE, KNOWINGLY, WILLFULLY OR RECKLESSLY, MADE MISREPRESENTATIONS OF MATERIAL FACTS AND OMITTED TO DISCLOSE MATERIAL FACTS IN CONNECTION WITH THE OFFERS AND SALES OF CMO INVESTMENTS TO CUSTOMERS. TURBEVILLE MADE MATERIAL MISREPRESENTATIONS AND OMITTED TO DISCLOSE MATERIAL INFORMATION AT LEAST NEGLIGENTLY, AND IN SO DOING, VIOLATED HIS |



OBLIGATION TO OBSERVE HIGH STANDARDS OF COMMERCIAL HONOR
AND JUST AND EQUITABLE PRINCIPLES OF TRADE. A MEMBER FIRM,
ACTING THROUGH TURBEVILLE, RECOMMENDED HIGH-RISK CMO
INVESTMENTS TO ELDERLY AND/OR RETIRED CUSTOMERS WITHOUT A
REASONABLE BASIS FOR BELIEVING THAT THE INVESTMENTS WERE
SUITABLE BASED ON THE CUSTOMERS' DISCLOSED AGE, INVESTMENT
EXPERIENCE, INVESTMENT OBJECTIVES, FINANCIAL SITUATION AND/OR
RISK TOLERANCE. TURBEVILLE MADE MISREPRESENTATIONS, OMITTED
MATERIAL FACTS AND USED MISLEADING STATEMENTS IN LETTERS SENT
TO CERTAIN CUSTOMERS WHO INVESTED IN THE CMOS. THE FIRM,
ACTING THROUGH TURBEVILLE, FAILED TO ENFORCE ITS PROCEDURES
REGARDING SAFEGUARDING CUSTOMER INFORMATION. TURBEVILLE
WILLFULLY VIOLATED SECTION 10(B)OF THE SECURITIES EXCHANGE ACT,
SEC RULE 10B-5, NASD RULES 2110, 2120.

| | |
|---|---|
| **Current Status:** | On Appeal |
| **Action Appealed To:** | SRO |
| **Date Appeal filed:** | 06/12/2012 |
| **Appeal Limitation Details:** | |
| **Resolution:** | Decision |
| **Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** | No |
| **Resolution Date:** | 05/31/2012 |
| **If the regulator is the SEC, CFTC, or an SRO, did the action result in a finding of a willful violation or failure to supervise?** | No |

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

www.finra.ora/brokercheck



**(1) willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or to have been unable to comply with any provision of such Act, rule or regulation?**

**(2) willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board? or**

©2014 FINRA. All rights reserved.   Report# 75836-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.



**(3) failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation by such person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any such Acts, or any of the rules of the Municipal Securities Rulemaking Board?**

**Regulator Statement**          EXTENDED HEARING PANEL DECISION RENDERED MAY 31, 2012 WHEREIN TURBEVILLE IS BARRED FROM ASSOCIATION WITH ANY FINRA MEMBER IN ANY CAPACITY, ORDERED TO PAY RESTITUTION TOTALING $440,600, JOINTLY AND SEVERALLY, TO CUSTOMERS AND ORDERED TO PAY COSTS OF $27,047.55, JOINTLY AND SEVERALLY. APPEALED TO THE NAC ON JUNE 12, 2012.

---

**Reporting Source:**          Broker

**Regulatory Action Initiated By:**          FINRA

**Sanction(s) Sought:**          Other: N/A

**Date Initiated:**          12/30/2009

**Docket/Case Number:**          2007011413501

**Employing firm when activity occurred which led to the regulatory action:**          BROOKSTONE SECURITIES, INC.

**Product Type:**          Other: COLLATERALIZED MORTGAGE OBLIGATIONS

**Allegations:**          SECTION 10(B) OF THE SECURITIES EXCHANGE ACT, SEC RULE 10B-5, NASD RULES 2110, 2120, 2210(D)(1)(A), 2210(D)(1)(B), 2310(A), 3010(B) - ANTONY LEE TURBEVILLE, IN CONNECTION WITH THE PURCHASE OR SALE OF COLLATERALIZED MORTGAGE OBLIGATIONS (CMOS), DIRECTLY

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.



OR INDIRECTLY, BY THE USE OF MEANS OR INSTRUMENTALITIES OF
INTERSTATE COMMERCE (INCLUDING BY TELEPHONE), OR OF THE MAILS,
KNOWINGLY OR RECKLESSLY EMPLOYED DEVICES, SCHEMES OR
ARTIFICES TO DEFRAUD; MADE UNTRUE STATEMENTS OF A MATERIAL
FACT OR OMITTED TO STATE A MATERIAL FACT NECESSARY IN ORDER
TO MAKE THE STATEMENTS MADE, IN LIGHT OF THE CIRCUMSTANCES
UNDER WHICH THEY WERE MADE, NOT MISLEADING, CONCERNING CMO
INVESTMENTS; OR ENGAGED IN ACTS, PRACTICES OR COURSES OF
BUSINESS WHICH OPERATED, OR WOULD OPERATE, AS A FRAUD OR
DECEIT UPON HIS CUSTOMERS. TURBEVILLE EFFECTED TRANSACTIONS
IN, OR INDUCED THE PURCHASE OR SALE OF, SECURITIES BY MEANS OF
MANIPULATIVE, DECEPTIVE OR OTHER FRAUDULENT DEVICE OR
CONTRIVANCE. TURBEVILLE, KNOWINGLY, WILLFULLY OR RECKLESSLY,
MADE MISREPRESENTATIONS OF MATERIAL FACTS AND OMITTED TO
DISCLOSE MATERIAL FACTS IN CONNECTION WITH THE OFFERS AND
SALES OF CMO INVESTMENTS TO CUSTOMERS. TURBEVILLE MADE
MATERIAL MISREPRESENTATIONS AND OMITTED TO DISCLOSE MATERIAL
INFORMATION AT LEAST NEGLIGENTLY, AND IN SO DOING, VIOLATED HIS
OBLIGATION TO OBSERVE HIGH STANDARDS OF COMMERCIAL HONOR
AND JUST AND EQUITABLE PRINCIPLES OF TRADE. A MEMBER FIRM,
ACTING THROUGH TURBEVILLE, RECOMMENDED HIGH-RISK CMO
INVESTMENTS TO ELDERLY AND/OR RETIRED CUSTOMERS WITHOUT A
REASONABLE BASIS FOR BELIEVING THAT THE INVESTMENTS WERE
SUITABLE BASED ON THE CUSTOMERS' DISCLOSED AGE, INVESTMENT
EXPERIENCE, INVESTMENT OBJECTIVES, FINANCIAL SITUATION AND/OR
RISK TOLERANCE. TURBEVILLE MADE MISREPRESENTATIONS, OMITTED
MATERIAL FACTS AND USED MISLEADING STATEMENTS IN LETTERS SENT
TO CERTAIN CUSTOMERS WHO INVESTED IN THE CMOS. THE FIRM,
ACTING THROUGH TURBEVILLE, FAILED TO ENFORCE ITS PROCEDURES
REGARDING SAFEGUARDING CUSTOMER INFORMATION. TURBEVILLE
WILLFULLY VIOLATED SECTION 10(B)OF THE SECURITIES EXCHANGE ACT,
SEC RULE 10B-5, NASD RULES 2110, 2120.

| | |
|---|---|
| **Current Status:** | On Appeal |
| **Action Appealed To:** | NATIONAL ADJUDICATORY COUNCIL ("NAC") |
| **Date Appeal filed:** | 06/12/2012 |
| **Appeal Limitation Details:** | |
| **Resolution:** | Decision |

©2014 FINRA. All rights reserved.    Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

www.finra.org/brokercheck



| | |
|---|---|
| **Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** | No |
| **Resolution Date:** | 05/31/2012 |
| **Sanctions Ordered:** | Bar (Permanent) Restitution |

**Sanction 1 of 1**

| | |
|---|---|
| **Sanction Type:** | Bar (Permanent) |
| **Capacities Affected:** | ALL CAPACITIES |
| **Duration:** | PERMANENT |
| **Start Date:** | |
| **End Date:** | |

**Monetary Sanction 1 of 1**

| | |
|---|---|
| **Monetary Related Sanction:** | Restitution |
| **Total Amount:** | $440,600.00 |
| **Portion Levied against individual:** | $440,600.00 |
| **Payment Plan:** | NONE |
| **Is Payment Plan Current:** | Yes |
| **Date Paid by individual:** | 05/31/2012 |
| **Was any portion of penalty waived?** | No |
| **Amount Waived:** | |
| **Broker Statement** | THE FINRA HEARING PANEL DECISION ISSUED ON MAY 31, 2012 IS NON-FINAL AND CURRENTLY UNDER APPEAL PURSUANT TO RESPONDENTS' NOTICE OF APPEAL FILED ON JUNE 12, 2012.  WE BELIEVE THE APPEAL IS ULTIMATELY LIKELY TO SUCCEED AS, BASED UPON THE WRITTEN OPINION OF OUR OUTSIDE ATTORNEYS, THERE IS A REASONABLE BASIS FOR AN APPELLATE BODY, WHETHER THE NATIONAL ADJUDICATORY COUNCIL ("NAC") OR A HIGHER AUTHORITY, TO VACATE THIS DECISION ON THE GROUNDS THAT FINRA ENFORCEMENT DID NOT |

www.finra.org/brokercheck



SATISFY THE LEGAL REQUIREMENTS NECESSARY, IN SPITE OF THE PANELS DECISION TO ASSESS LIABILITY AGAINST MR. TURBEVILLE AND THE OTHER RESPONDENTS. TURBEVILLE CONTINUES TO REFUTE THE ALLEGATIONS ASSERTED BY FINRA AND ITS AGENTS. TURBEVILLE DISTRIBUTED CMO DISCLOSURE BOOKLETS REQUIRED BY FINRA (NASD) AND DISCLOSED THE KNOWN CHARACTERISTICS AND RISKS OF CMOS FULLY. ADDITIONALLY, TURBEVILLE ORALLY AND IN WRITING DISCLOSED THE RISKS ASSOCIATED WITH CMOS BEYOND THE REQUIREMENTS OF FINRA (NASD) AND THOSE DISCLOSURES WERE SIGNED BY ALL THE CLIENTS THAT CHOSE TO INVEST IN CMOS PRIOR TO THE EXECUTION OF A SINGLE CMO TRADE IN THEIR ACCOUNTS. MOREOVER, FINRA FAILS TO DISCLOSE IN ITS COMPLAINT THAT IT WAS FULLY AWARE OF TURBEVILLE'S CMO ACTIVITIES SINCE 2002 AND TOOK NO ACTION UNTIL THESE PRODUCTS BECAME A POLITICAL HOT-POTATO. AS NOTED IN NASD NOTICE TO MEMBERS 93-73: "PRINCIPAL PAYMENTS ON CMOS ARISE FROM BOTH THE REGULAR AMORTIZATION OF THE UNDERLYING MORTGAGES AND FROM PREPAYMENTS OF THOSE MORTGAGES DUE TO SALES OR REFINANCING. AS RECENT HISTORY SHOWS, WHEN INTEREST RATES DECLINE SUBSTANTIALLY, MANY HOMEOWNERS CHOOSE TO REFINANCE THEIR MORTGAGES. THIS ACTIVITY CAN RESULT IN CMOS PAYING OFF PRINCIPAL MORE RAPIDLY THAN HAD BEEN ANTICIPATED. THUS, A CMO INVESTOR MAY BE FACED WITH INVESTING HIS OR HER PRINCIPAL AT A CURRENT LOWER RATE. IN A RISING INTEREST RATE ENVIRONMENT, HOMEOWNERS MAY NOT REFINANCE OR SELL THEIR HOUSES AS QUICKLY: THUS, CMO INVESTORS MAY HAVE TO HOLD THEIR INVESTMENT FOR A LONGER TIME PERIOD. WHILE PRINCIPAL PAYMENTS MAY BE QUITE PREDICTABLE FOR CERTAIN TRANCHES OF A GIVEN CMO, OTHER TRANCHES OF THE SAME ISSUE MAY BE SIGNIFICANTLY LESS PREDICTABLE." WITH REGARD TO INVERSE FLOATERS, THE NOTICE TO MEMBERS FURTHER STATES: "AT WORST, RISING RATES WILL LOWER INTEREST PAYMENTS AND EXTEND RETURN OF PRINCIPAL BEYOND THE AVERAGE LIFE." ALL OF THESE RISKS WERE DISCLOSED TO THE CLIENTS BEFORE A SINGLE DOLLAR WAS INVESTED. LASTLY, WE NOTE THAT FINRA UNREASONABLY FOCUSES ONLY ON A PERIOD OF TIME THAT CAN EASILY BE DESCRIBED AS ONE OF THE MOST TURBULENT RISING INTEREST RATE CYCLES IN FIFTY YEARS AND EXCLUDES THE PERIOD OF TIME IMMEDIATELY PRIOR AND IMMEDIATELY AFTER; REASONABLE PEOPLE MIGHT QUESTION THE FAIRNESS OF SUCH A SKEWED APPROACH.

©2014 FINRA. All rights reserved.    Report# 75638-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

User Guidance



## Investigation

This type of disclosure event involves any ongoing formal investigation by an entity such as a grand jury state or federal agency, self-regulatory organization or foreign regulatory authority. Subpoenas, preliminary or routine regulatory inquiries, and general requests by a regulatory entity for information are not considered investigations and therefore are not included in a BrokerCheck report.

### Disclosure 1 of 1

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Initiated By:** | FINRA |
| **Notice Date:** | 07/03/2013 |
| **Details:** | WELLS EXAMINATION #20130375047: ON JULY 3, 2013, FINRA MADE A PRELIMINARY DETERMINATION TO RECOMMEND THAT DISCIPLINARY ACTION BE BROUGHT AGAINST ANTONY TURBEVILLE ALLEGING HE FILED A FALSE COMPLAINT AGAINST AND ATTEMPTED TO INTIMIDATE WITNESSES IN A FINRA DISCIPLINARY ACTION, IN VIOLATION OF FINRA RULE 2010. |
| **Is Investigation pending?** | Yes |

User Guidance



## Customer Dispute - Award/Judgment

This type of disclosure event involves a final, consumer-initiated, investment-related arbitration or civil suit containing allegations of sales practice violations against the broker that resulted in an arbitration award or civil judgment for the customer.

### Disclosure 1 of 1

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Employing firm when activities occurred which led to the complaint:** | BROOKSTONE SECURITIES, INC. |
| **Allegations:** | UNSUITABILITY; MISREPRESENTATIONS; MANIPULATION; BREACH OF FIDUCIARY DUTY; AND CHURNING |
| **Product Type:** | Other: UNSPECIFIED CMOS |
| **Alleged Damages:** | $105,000.00 |

### Arbitration Information

| | |
|---|---|
| **Arbitration/Reparation Claim filed with and Docket/Case No.:** | FINRA - CASE #08-02937 |
| **Date Notice/Process Served:** | 08/19/2008 |
| **Arbitration Pending?** | No |
| **Disposition:** | Award |
| **Disposition Date:** | 10/05/2009 |
| **Disposition Detail:** | RESPONDENT IS JOINTLY AND SEVERALLY LIABLE FOR UNSUITABILITY AND CHURNING AND SHALL PAY TO CLAIMANT COMPENSATORY DAMAGES IN THE AMOUNT OF $50,000. |

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Employing firm when activities occurred which led to the complaint:** | BROOKSTONE SECURITIES, INC. |
| **Allegations:** | EXCESSIVE COMMISSIONS, FAILURE TO FOLLOW CLIENT INSTRUCTIONS, DISAPPOINTING INVESTMENT PERFORMANCE. |
| **Product Type:** | Debt-Asset Backed |
| **Alleged Damages:** | $40,000.00 |



| | |
|---|---|
| **Alleged Damages Amount Explanation (if amount not exact):** | POORLY WORDED STATEMENT OF CLAIM MAKES EXACT STATEMENTS DIFFICULT. |
| **Is this an oral complaint?** | No |
| **Is this a written complaint?** | Yes |
| **Is this an arbitration/CFTC reparation or civil litigation?** | No |

## Customer Complaint Information

| | |
|---|---|
| **Date Complaint Received:** | 09/02/2008 |
| **Complaint Pending?** | No |
| **Status:** | Arbitration Award/Monetary Judgment (for claimants/plaintiffs) |
| **Status Date:** | 06/28/2011 |
| **Settlement Amount:** | $55,068.14 |
| **Individual Contribution Amount:** | $50,000.00 |

## Arbitration Information

| | |
|---|---|
| **Arbitration/CFTC reparation claim filed with (FINRA, AAA, CFTC, etc.):** | FINRA |
| **Docket/Case #:** | 08-02937 |
| **Date Notice/Process Served:** | 09/02/2008 |
| **Arbitration Pending?** | No |
| **Disposition:** | Award to Customer |
| **Disposition Date:** | 10/05/2009 |
| **Monetary Compensation Amount:** | $50,250.00 |
| **Individual Contribution Amount:** | $50,000.00 |

## Civil Litigation Information

| | |
|---|---|
| **Type of Court:** | State Court |
| **Name of Court:** | CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT |



**Location of Court:**       HILLSBOROUGH COUNTY, FL

**Docket/Case #:**           09-27869

**Broker Statement**         THE PETITION TO VACATE ARBITRATION AWARD DENIED AND AWARD
CONFIRM ON 3/15/2011. IN RULING UPON THE MOTION TO VACATE THE
ARBITRATION AWARD ENTERED AGAINST ME AND BROOKSTONE
SECURITIES, THE FLORIDA CIRCUIT COURT JUDGE MADE THE
FOLLOWING COMMENTS REGARDING [CUSTOMER], DVM, THE CLAIMANT
IN THIS ARBITRATION: "...HE HAS CONSISTENTLY DEMONSTRATED THE
INABILITY TO COGENTLY ARTICULATE A LEGAL THEORY FOR RECOVERY.
INDEED, A REVIEW OF THIS FILE DEMONSTRATES THE NEED FOR
INDIVIDUALS TO SEEK LEGAL COUNSEL.  TO COMPOUND THE ISSUE, THE
EVIDENCE PRESENTED ESTABLISHES THAT [CUSTOMER] ENGAGED IN EX
PARTE COMMUNICATION, BY LETTER, WITH THE CHAIRPERSON OF THE
ARBITRATION PANEL PRESIDING OVER HIS CASE. ... THE COURT ALSO
NOTES THAT FINRA RULE 12210 PROHIBITS SUCH COMMUNICATION
OUTSIDE THE PRESENCE OF ALL PARTIES IN THE PROCEEDING AND ALSO
PROHIBITS A PARTY FROM SUBMITTING MATERIALS DIRECTLY TO ANY
ARBITRATOR." NEVERTHELESS, THE COURT DETERMINED THAT THE
LEGAL STANDARD FOR VACATING THE AWARD WAS NOT SATISFIED.
(FOR A NO-COST COPY OF THE COURT'S DECISION OR OTHER RELATED
COURT DOCUMENTS, PLEASE CONTACT ME AT 863.838.5802.)

THE ALLEGATIONS MADE BY [CUSTOMER] IN THIS ARBITRATION
REGARDING THE SALE OF CMOS (COLLATERALIZED MORTGAGE
OBLIGATIONS), IN PART, RESULTED IN A SUBSEQUENT INVESTIGATION BY
FINRA.  THIS INVESTIGATION BECAME THE BASIS FOR A PENDING FINRA
DISCIPLINARY PROCEEDING.  I AM VIGOROUSLY DEFENDING AGAINST
THAT PROCEEDING AND ADAMENTLY DENY THE ALLEGATIONS MADE
AGAINST ME.

©2014 FINRA. All rights reserved.   Report# 75636-77605 about ANTONY L. TURBEVILLE. Data current as of Monday, June 02, 2014.

www.finra.org/brokercheck          Case 8:15-cv-02920-JSM-EAJ   Document 2   Filed 12/23/15   Page 43 of 43 PageID 54

**End of Report**



This page is intentionally left blank.