## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANTONY LEE TURBEVILLE,

    Plaintiff,

v.                                          CASE NO: 8:15-CV-2920-T-30EAJ

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, JOHN DOES, an individual,
and JOHN WILLIAM McCALL, an
individual,

    Defendants.
_____/

## **ORDER**

    THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand (Dkt. #6), Defendant FINRA's Opposition to Plaintiff's Motion to Remand (Dkt. #12), Defendant FINRA's Motion to Dismiss Verified Complaint (Dkt. #4), and Plaintiff's Memorandum in Opposition to FINRA's Motion to Dismiss Verified Complaint (Dkt. #7). Upon review of the motions, responses, and being otherwise advised in the premises, the Court concludes that Plaintiff's motion to remand should be denied and Defendant's motion to dismiss should be granted.

**BACKGROUND**

**I.      Introduction**

Plaintiff Antony Lee Turbeville filed the instant action against Defendants Financial Industry Regulatory Authority ("FINRA"), John Does, and John William McCall[1] in the Tenth Judicial Circuit, in and for Polk County, Florida, on or about October 2, 2015. Turbeville alleges Florida tort law claims; specifically, his complaint alleges claims of defamation, abuse of process, intentional interference with a prospective advantage, and conspiracy.

FINRA timely removed the action to this Court, arguing that federal law preempts state law jurisdiction over FINRA proceedings. FINRA also filed a motion to dismiss the action, asserting that it has absolute immunity for its regulatory actions and Turbeville has no private right of action against FINRA for violations of its rules or of the Exchange Act.

Turbeville's motion to remand argues that this case is not dependent on any interpretation of FINRA rules. And that the claims do not arise out of any violation of FINRA rules. The Court disagrees. A close reading of the complaint demonstrates that the claims are premised on FINRA's failure to follow its own regulations. Federal law is clear that these types of artfully pled "state law" claims are preempted. Federal law is also clear that FINRA is immune from these types of claims. The Court now turns to the relevant facts.

---

[1] It appears from a review of the docket that Plaintiff has not effected service on the individual Defendants.

**II.     Relevant Facts**

Turbeville is a former registered representative of a securities firm. In 2009, FINRA filed a complaint against Turbeville and others. FINRA is a private, not-for-profit Delaware corporation and self-regulatory organization ("SRO") registered with the Securities Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §78o-3, *et seq.*, amending the Exchange Act. As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the securities markets. The underlying disciplinary action against Turbeville was for securities fraud—including allegations that Turbeville recommended collateralized mortgage obligations ("CMOs") to unsophisticated, elderly clients with a low tolerance for risk and for whom the securities were unsuitable.

Following a full hearing, Turbeville was found to have violated FINRA rules. He was barred from associating with any FINRA member in any capacity, ordered to pay restitution to his clients, and assessed costs.

Turbeville appealed the decision to FINRA's National Adjudicatory Council ("NAC"). The NAC affirmed the findings of the Hearing Panel in a decision dated April 16, 2015, and Turbeville appealed to the SEC on May 15, 2015. On August 5, 2015, Turbeville abandoned his appeal.

While the FINRA Case was on appeal to the NAC, FINRA learned that Turbeville had filed a lawsuit in Florida state court against the elderly clients who had testified against him in the FINRA disciplinary hearing. FINRA opened an investigation to determine whether

Turbeville's lawsuit constituted an additional violation of FINRA rules. Specifically, on July 3, 2013, FINRA issued a Wells Notice[2] to Turbeville, advising him that FINRA had determined it had sufficient cause to file a disciplinary proceeding against him and inviting Turbeville to submit a response to persuade FINRA not to file a case. At that time, Turbeville was no longer registered with a broker-dealer. Ultimately, FINRA publicly released through BrokerCheck that a Wells Notice had been issued to Turbeville. Specifically, in a section captioned "Details," the Disclosure Event entry stated as follows:

> WELLS EXAMINATION #20130375047: ON JULY 3,2013, FINRA MADE A PRELIMINARY DETERMINATION TO RECOMMEND THAT DISCIPLINARY ACTION BE BROUGHT AGAINST ANTONY TURBEVILLE ALLEGING HE FILED A FALSE COMPLAINT AGAINST AND ATTEMPTED TO INTIMIDATE WITNESSES IN A FINRA DISCIPLINARY ACTION, IN VIOLATION OF FINRA RULE 2010.

(Dkt. 2 at p.39). Turbeville, through counsel, disputed the Wells Notice and FINRA later withdrew and removed it from the BrokerCheck report.

Ultimately, Turbeville dismissed his lawsuit against his former clients after the Florida state court ordered him to arbitrate his claims. Turbeville then filed the instant action in state court. Turbeville's complaint alleges that FINRA, in violation of its own regulations, publicly disclosed the Wells Notice. Turbeville alleges that the Wells Notice was first published in or around July, 2013, and was continuously published until 2014, or 2015.

---

[2] A Wells Notice is issued when FINRA determines it has sufficient cause to file a disciplinary case against a registered representative or firm but has not yet filed charges. Wells Notices are reported and disclosed in BrokerCheck, a program that is publically available on the internet to allow the public to obtain information about a broker or firm.

According to Turbeville, FINRA published the Wells Notice maliciously to prevent Turbeville from clearing his name and reputation. During the entire time that the Wells Notice was published, Turbeville was neither a member of FINRA, nor was he associated with a member of FINRA. And he contends that the allegations contained in the Wells Notice were false. Turbeville's claims of defamation, abuse of process, intentional interference with a prospective advantage, and conspiracy are premised on FINRA's publication of the Wells Notice. Turbeville avers that he lost potential clients as a result of the publication of the Wells Notice.

The Court now turns to the relevant law.

## DISCUSSION

**I.     Turbeville's Motion to Remand**

It is axiomatic that federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). They possess only that power authorized by the Constitution and by statute. *See id.* (citing *Willy v. Coastal Corp.,* 503 U.S. 131, 136-137 (1992) and *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)). These jurisdictional grants are not to be expanded by judicial decree. *See id.* at 377 (citing *Am. Fire & Cas. Co. v. Finn,* 341 U.S. 6 (1951)). It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. *See id.* (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178 (1936)). Removal statutes are narrowly construed; when the defendant and the

plaintiff clash about jurisdiction, any uncertainties must be construed in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

In considering whether they possess subject matter jurisdiction over a case or controversy, federal district courts are guided by the well-pleaded complaint rule that provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908). Pursuant to that rule, a case may be removed based on federal question jurisdiction only when the plaintiff's statement of his own cause of action shows that it is based on federal law. *See Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.,* 182 F.3d 851, 854 (11th Cir.1999) (citing *Mottley*, 211 U.S. at 149). Stated differently, only state court actions that originally could have been filed in federal court may be removed to federal court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

However, notwithstanding the absence of federal question allegations on the face of a complaint, a federal court must retain jurisdiction if the complaint is "artfully pleaded" so as to omit necessary federal questions in an attempt to defeat removal, but the complaint actually involves a substantial question of federal law. *See Rivet v. Regions Bank of La.,* 118 S.Ct. 921, 925 (1998) (explaining that the "artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claims").

Here, Turbeville argues that federal subject matter jurisdiction is lacking because his complaint is grounded exclusively under state law. After carefully reviewing Turbeville's complaint, the Court concludes that removal was proper. Turbeville is a formerly registered

representative with FINRA who worked in the securities industry and made recommendations to clients about investments and investment strategies. FINRA is an SRO that regulates its members and is required to discipline them for violations of FINRA rules. The conduct about which Turbeville complains stems from FINRA's regulatory investigation of whether Turbeville violated FINRA rules when he filed a lawsuit against his former clients who had testified in the prior FINRA disciplinary proceeding against him. Notably, Turbeville filed the lawsuit against his former clients during the pendency of his appeal of the FINRA disciplinary action.

As FINRA points out in its response, numerous federal courts have rejected plaintiffs' attempts to remand challenges to FINRA rules or to FINRA's application of those rules, notwithstanding that the state court complaints purport to assert purely state law claims. For example, in *Whitehall Wellington Invs., Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, No. 00-3899-CIV-MIDDLEBROOKS, 2000 WL 1846129 (S.D. Fla. Dec. 7, 2000), the district court denied the plaintiff's motion to remand, noting that the complaint's allegations made clear that the plaintiff essentially accused NASD and NASD Regulation of violating their own stated practices, rules and bylaws. Also, in *Empire Fin. Grp. v. FINRA, Inc.*, No. 08-80534-CIV-RYSKAMP/VITUNAC, 2009 U.S. Dist. LEXIS 133643, *13-*14 (S.D. Fla. Jan. 15, 2009), the district court denied the plaintiff's motion to remand, holding "allegation[s] of . . . [FINRA's] regulatory function under federal law and allegation[s] of violations thereof provided notice that at least some of petitioner's claims will arise under the laws of the

United States—making the district court the proper forum for the adjudication of the claim under 28 U.S.C. §1331 . . ." (internal quotations omitted).

In order to determine Turbeville's claims that FINRA's regulatory investigation and disclosure of that investigation on a regulatory database were outside its authority and in violation of FINRA rules and regulations, the Court must necessarily interpret FINRA's rules and regulations. Accordingly, removal was proper and Turbeville's motion to remand is denied.

## II.     FINRA's Motion to Dismiss

### A.     FINRA Has Absolute Immunity for Its Regulatory Actions

The law is clear that "[b]ecause they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions." *Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007); *Empire Fin. Grp.*, 2009 U.S. Dist. LEXIS at *19 (holding that FINRA has absolute immunity from tort claims concerning its regulatory duties).

Turbeville's claims relate to FINRA's actions of conducting a disciplinary investigation against him and subsequently making that investigation public on BrokerCheck; these actions fall squarely within FINRA's regulatory duties. As such, the claims against FINRA are barred by FINRA's absolute regulatory immunity. *See Santos Buch v. Fin. Indus. Regulatory Auth., Inc.*, 591 Fed.Appx. 32, 34 (2d Cir. 2015) ("Because all of the relevant conduct by FINRA (and by NASD and NASDR before it) was undertaken in

furtherance of its regulatory responsibilities as an SRO, it is immune from [the plaintiff's] claims for damages"). The immunity applies "regardless of FINRA's alleged motives" and despite any disagreement Turbeville has with respect to the manner in which FINRA carried out its regulatory function. *See Empire Fin. Grp.*, 2009 U.S. Dist. LEXIS at *19.

Turbeville argues that FINRA lacked authority to regulate his actions because he was no longer a member of FINRA or associated with a member of FINRA at the time that it published the Wells Notice. This argument is without merit because the allegations make clear that FINRA's investigation of Turbeville was related to his prior involvement with the elderly clients and FINRA's concern that Turbeville's state court action against those clients was filed in violation of FINRA rules. In other words, FINRA's investigation related to its earlier disciplinary proceeding against Turbeville and questioned whether Turbeville could file a lawsuit against the same clients that had testified against him in that disciplinary proceeding.

**B.     No Private Right of Action Exists against FINRA**

Turbeville alleges that FINRA's disclosure of the Wells Notice on his BrokerCheck records violated FINRA rules requiring non-public FINRA investigations. Taking this allegation as true, Turbeville is barred from suing FINRA for violating its rules or those of the Exchange Act. "In the absence of an express private right of action, courts have consistently refused to find an implied private right of action against SROs for actions or omissions under the Exchange Act. Rather, courts have held that the Exchange Act bars private rights of action against SROs, be they asserted under the Exchange Act, or be they

state law claims when those claims relate to defendants' SRO activities." *Id.* at 21-22 (citing *MM&S Fin., Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 364 F.3d 908, 910-11 (8th Cir. 2004) (holding that the Exchange Act does not create a private right of action against an SRO for violations of the Exchange Act or for breach of contract); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("It is undisputed, even by [the plaintiff], that a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act.").

Here, FINRA was performing a regulatory function when it opened an investigation of a previously registered broker to determine whether a disciplinary proceeding should be filed against him for violating FINRA rules.

### III.  Conclusion

Turbeville's complaint, however artfully pleaded, is firmly rooted in federal securities law and in FINRA's exercise of its regulatory and prosecutorial duties under the Exchange Act. FINRA's removal was appropriate because this Court has subject matter jurisdiction. Turbeville alleges that FINRA disclosed the Wells Notice on his BrokerCheck record in violation of its own rules and regulations—actions that amount to regulatory and investigative conduct. Turbeville seeks money damages against FINRA for these purported violations. The Court grants FINRA's motion to dismiss for two reasons: (1) immunity bars Turbeville's claims against FINRA and (2) Turbeville has no private right of action against FINRA for the alleged conduct.

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Remand (Dkt. #6) is denied.

2. Defendant Financial Industry Regulatory Authority's Motion to Dismiss Verified Complaint (Dkt. #4) is granted to the extent explained herein.

3. The claims against Defendant Financial Industry Regulatory Authority are dismissed with prejudice.

4. The complaint is remanded to the Tenth Judicial Circuit, in and for Polk County, Florida, with respect to the claims against Defendant John William McCall. The Clerk of Court shall provide the State Court with a copy of this Order and, thereafter, shall close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 9, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

*S:\Even\2015\15-cv-2920 mtd remand 4 6.wpd*